3 P.3d 733 (2000)
141 Wash.2d 103
STATE of Washington, Respondent,
v.
Mario V. HADDOCK, aka Justiniano, Petitioner.
No. 67577-5.
Supreme Court of Washington, En Banc.
Argued September 16, 1999.
July 13, 2000.
Thomas Edward Doyle, Mansville, Robert M. Quillian, Olympia, and Patricia Anne Pethick, Tacoma, for Petitioner.
David Brian St. Pierre, Bremerton, for Respondent.
ALEXANDER, J.
Mario Haddock, also known as Mario Justiniano (hereafter referred to as Haddock), obtained review of a decision of the Court of Appeals reversing a 186-month sentence imposed on him by the Mason County Superior Court. We accepted review only on the issue *734 of the validity of the sentencing court's calculation of Haddock's offender score. Although we agree with the Court of Appeals that the sentencing court misapplied RCW 9.94A.400(1) in counting each of Haddock's current offenses toward his offender score, and, thereby, determining his offender score to be nine, we reverse the Court of Appeals and remand for resentencing. We do so because we conclude that the Court of Appeals also erred in calculating Haddock's offender score because it concluded that Haddock's convictions for possession of stolen property and possession of stolen firearms did not encompass the "same criminal conduct."

I.
On November 11, 1995, Mario Haddock, a convicted felon, started an altercation in Shelton, Washington at a residence, which had formerly been his home. As a consequence, the Shelton police were summoned. Prior to their arrival, Haddock brandished two handguns in the presence of his former girlfriend, and several of her friends and family members. When the police arrived, they found six firearms and a computer in the residence. They did not, however, find Haddock or the handguns he had brandished. Investigation subsequently revealed that the items the police found at the residence had been taken in a single burglary of the Mason County home of Brian and Julie Chrisman.
The Mason County prosecutor subsequently charged Haddock in Mason County Superior Court with six counts of possession of stolen firearms (the six rifles), one count of first degree possession of stolen property (the computer), and, because Haddock was a convicted felon, eight counts of first degree unlawful possession of a firearm (the six rifles and the two handguns). A jury found Haddock guilty of all charges.
At sentencing, Haddock stipulated to five prior convictions. The State argued that each of Haddock's current convictions should count separately toward his offender score because there was "no proof that the State has, and nothing that the State could do at trial to try to prove that the burglary underlying these stolen firearms was anything committed by [Haddock]." Report of Proceedings (RP) at 240. Haddock's current convictions, the State urged, did not, therefore, encompass the "same criminal conduct," and "fourteen [was] the correct number to add ... as to any of the counts involved." RP at 241. The sentencing court thereafter imposed a standard-range sentence of 186 months in prison.[1] This sentence was consistent with a determination that Haddock's offender score was nine, which, pursuant to RCW 9.94A.310, is the maximum allowable score. Based on Haddock's stipulation to five prior offenses, it is apparent that the sentencing court counted four or more of his other current offenses toward his offender score. It did not, however, explicitly engage in the "same criminal conduct" analysis that we discuss below.
Haddock appealed the sentences to the Court of Appeals, assigning error to the sentencing court's determination of his offender score. He argued there that his offender score should be five. The Court of Appeals reversed the sentencing court, holding that Haddock's offender score was seven, rather than nine. It reached this conclusion on the basis that, in addition to five points for prior offenses, Haddock should receive "one point for all convictions of possessing a stolen firearm; one point for all convictions of unlawful possession of a stolen firearm; and one point for possession of stolen computer." State v. Haddock, No. 21374-5-II, slip op. at 6, 92 Wash.App. 1065, 1998 WL 775679 (Wash.Ct.App. Nov. 6, 1998).
Haddock sought review of the Court of Appeals' decision. He contends here, as he did at the Court of Appeals, that his offender score should be five, on the basis that he had no other current offenses because all of his convictions "encompassed the same course of *735 criminal conduct for purposes of calculating his offender score." Br. of Appellant at 5. The State responds only that the Court of Appeals correctly decided this issue. We granted Haddock's petition for review.

II.
Because the sentencing court did not elect to impose an exceptional sentence, it was its responsibility to accurately determine the standard range sentence for Haddock's offenses. The standard range is found on the sentencing grid in RCW 9.94A.310 at "the intersection of the column defined by the offender score and the row defined by the offense seriousness level." WASHINGTON STATE SENTENCING GUIDELINES COMM'N, ADULT SENTENCING GUIDELINES MANUAL 1999, at I-14. The seriousness level of each crime is set forth in RCW 9.94A.320. The offender score is determined, for any one offense, as follows: each past crime equals one point, and each "other current offense" equals one point. RCW 9.94A.360; RCW 9.94A.400. However, if two current offenses encompass the "same criminal conduct," as defined in RCW 9.94A.400(1)(a), then those current offenses together merit only one point.
As noted above, Haddock stipulated to having five prior convictions and was convicted of three "sets" of current offenses, composed as follows: one set of eight counts of unlawful possession of a firearm; one set of six counts of possession of stolen firearms; and one set of one count of possession of stolen property. The Court of Appeals concluded that Haddock's offender score was seven, on the basis that when he was sentenced on any conviction, neither that conviction nor any of the other convictions in that same "set" counted toward his offender score. This determination was consistent with a provision in RCW 9.94A.400(1)(a), which provides that only prior offenses and other "current offenses" merit a point addition. Thus, the offense for which the offender is being sentenced does not count toward the offender score.[2]
Neither party contends that the Court of Appeals used an improper method to calculate Haddock's offender score. Haddock, citing RCW 9.94A.400(1)(a), contends only that all of his current offenses encompassed the "same criminal conduct," and, as a consequence, his offender score should have been five because he has no other "current offenses" to add to his prior offenses.
The determinative issue before us, therefore, is which, if any, of Haddock's sets of convictions should be counted as "same criminal conduct." This inquiry is also governed by RCW 9.94A.400(1)(a) and case law interpreting that statute. That statute defines "same criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." If any one of these elements is missing, the offenses must be individually counted toward the offender score. State v. Garza-Villarreal, 123 Wash.2d 42, 47, 864 P.2d 1378 (1993).
Interpretation of a statutory provision is a question of law, and is reviewed by *736 this court de novo. In re Post Sentencing Review of Charles, 135 Wash.2d 239, 245, 955 P.2d 798 (1998). However, an appellate court, when reviewing a sentence under the Sentencing Reform Act of 1981, will generally defer to the discretion of the sentencing court,[3] and will reverse a sentencing court's determination of "same criminal conduct" only on a "clear abuse of discretion or misapplication of the law." State v. Elliott, 114 Wash.2d 6, 17, 785 P.2d 440 (1990).
We agree with the Court of Appeals that the Mason County Superior Court either abused its discretion or misapplied the law, or both, when it counted each of Haddock's current offenses separately toward his offender score. Unfortunately, the record sheds almost no light on the sentencing court's reasons for eschewing the "same criminal conduct" analysis. However, if it arbitrarily counted the convictions separately, it abused its discretion. See Rabon v. City of Seattle, 135 Wash.2d 278, 284, 957 P.2d 621 (1998). On the other hand, if the court concluded, as the State urged, that all 14 of Haddock's other current offenses should be separately counted because it was not proved that Haddock knew the items came from the same burglary, the court misapplied the law. Either error requires reversal and remand for resentencing.
We also agree with the State and the Court of Appeals that Haddock's convictions for unlawful possession of a firearm and possession of stolen firearms do not encompass the "same criminal conduct" because the respective victim of each crime differs. In our view, the victim of the offense of unlawful possession of a firearm is the general public. We believe that this offense is analogous to unlawful possession of a controlled substance, a crime which we have held victimizes the general public. See State v. Williams, 135 Wash.2d 365, 368, 957 P.2d 216 (1998); State v. Porter, 133 Wash.2d 177, 181, 942 P.2d 974 (1997); Garza-Villarreal, 123 Wash.2d at 47, 864 P.2d 1378.
In holding that the general public is the victim of the unlawful possession of firearms counts, we are not unmindful of the dissent's position that the victims of Haddock's unlawful possession of the handguns were his former girlfriend and her friends. If Haddock had been charged with assaulting his former girlfriend and her friends with the handguns, or even with unlawfully displaying those weapons, we would be inclined to agree that those individuals were the crime victims. He was not, however, charged with those offenses. A holding that the victim of all eight counts of unlawful possession of firearms is the general public is consistent with the definition of "victim" in the Sentencing Reform Act of 1981 (SRA): "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(40). Any injury Haddock's former girlfriend and her friends may have suffered was a direct result of Haddock's brandishing the guns, not his unlawful possession of them.
On the other hand, we are satisfied that the victims of the six counts of possession of stolen firearms and the one count of possession of stolen property were the owners of the firearms and property, the Chrismans. Again, we are aware of the concurring justices' conclusion that the general public is the victim of those offenses. We disagree, believing the concurrence is inconsistent with the SRA definition of "victim," set forth above. While we recognize that all crimes victimize the public in a general sense, we are satisfied that these crimes directly inflicted specific injury on individuals, of the sort described in the aforementioned statute. Surely the concurring justices would not identify the general public as the victim of a theft of personal property or firearms. In our opinion, the unlawful possession of property taken in a theft is a mere continuation of the thief's act of depriving the true owner of his or her right to possess their property. If we were to conclude otherwise, we would be discounting the significance of the injury to the owner of the property that was unlawfully possessed and would render the "same victim" requirement superfluous. We should not construe statutes so as to render language meaningless. *737 Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996). It is also difficult to square the concurrence with RCW 9.94A.142, which authorizes sentencing courts to order restitution only for specific "victims" of crimes, as defined above. See State v. Davison, 116 Wash.2d 917, 921, 809 P.2d 1374 (1991). A logical extension of the concurring opinion is that the trial court could not order that the Chrismans be restored to their property or its value, despite the fact that they were deprived of it by Haddock. This makes little sense.
We part company with the Court of Appeals insofar as it concluded that one point should be assigned for Haddock's single count of possession of stolen property and one point for his six counts of possession of stolen firearms. In our judgment, the trial court should have assigned only one point for both of these sets of offenses because they encompassed the same course of criminal conduct under RCW 9.94A.400(1)(a).
In reaching this determination, we note that the record makes it clear that the firearms and computer that the Shelton police found at Haddock's former residence were taken from the same victim, and were possessed at the same time and at the same place. Neither Haddock nor the State suggests otherwise. Thus, our principal focus has been on the criminal intent element of RCW 9.94A.400(1)(a).
Possession of stolen property and possession of stolen firearms share the mental element defined in RCW 9A.56.140 because the Legislature specifically so provided in RCW 9A.56.310(4).[4] However, the intent inquiry also focuses on the extent to which the offender's "criminal intent, as objectively viewed, changed from one crime to the next." State v. Dunaway, 109 Wash.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987). Thus, counts with identical mental elements, if committed for different purposes, would not be considered the "same criminal conduct."
We are satisfied that Haddock's criminal intent remained constant. This case is similar, in that regard, to State v. Porter, 133 Wash.2d 177, 942 P.2d 974 (1997). There, the defendant pleaded guilty to three counts of delivery of controlled substances. Two of those counts arose from a single incident in which the defendant sold two different controlled substances, almost simultaneously, to an undercover officer. Nevertheless, we held that those two counts encompassed the "same criminal conduct" because the defendant's "criminal intent [could not] be segregated into distinct present and future intents to commit criminal activity." Porter, 133 Wash.2d at 184, 942 P.2d 974. Similarly, Haddock's single intent to possess stolen property motivated the conduct underlying all seven convictions. In sum, his criminal intent, objectively viewed, did not change from one crime to the next.
In reaching the conclusion that Haddock's convictions for possession of stolen property and possession of stolen firearms did not encompass the same criminal conduct, the Court of Appeals reasoned that because "[n]either crime furthered the other[,]" Haddock's convictions for possession of stolen property and possession of stolen firearms did not share the same criminal intent. Haddock, slip op. at 6 (citing State v. Williams, 85 Wash.App. 508, 511-12, 933 P.2d 1072 (1997), rev'd on other grounds, 135 Wash.2d 365, 957 P.2d 216 (1998)). Thus, the Court of Appeals would require one crime to somehow "further" another in order for the two convictions to encompass same criminal conduct.
We believe the Court of Appeals misconstrued our decision in State v. Williams, 135 Wash.2d 365, 957 P.2d 216 (1998). In Williams, we reversed the Court of Appeals squarely on the very offender score analysis relied upon by the Court of Appeals here.[5] Second, the "furtherance test" was never *738 meant to be and never has been the lynchpin of this court's analysis of "same criminal conduct." See Dunaway, 109 Wash.2d at 215, 743 P.2d 1237 ("part of this analysis [of criminal intent] will often include the related issues of whether one crime furthered the other"). Additionally, this court has stated that "the furtherance test lends itself to sequentially committed crimes, [but i]ts application to crimes occurring literally at the same time is limited." State v. Vike, 125 Wash.2d 407, 412, 885 P.2d 824 (1994). Finally, requiring convictions to further each other would logically bar treating Haddock's multiple, simultaneous convictions of the same crime as "same criminal conduct."
The State, for its part, contends that the Legislature specifically intended firearms crimes to be punished more severely than other crimes, and argues that possession of stolen firearms should never be considered "same criminal conduct" as possession of other stolen property. For authority, the State cites the "Hard Time for Armed Crime" initiative of 1995, codified in RCW 9.94A.310(4).[6] While the State's premise that the Legislature and the people intend that crimes involving firearms should be more harshly punished than other crimes is more or less correct, its conclusion from that premise is unwarranted.
The "same criminal conduct" language of RCW 9.94A.400(1)(a) has not been modified in regard to firearms crimes,[7] despite the public's demonstrated interest in making special provisions for firearms offenses and a demonstrated willingness on the part of the Legislature to otherwise modify the "same criminal conduct" analysis.[8] This court will not rewrite a statute in order to further an abstract conception of legislative intent. See State v. Jackson, 137 Wash.2d 712, 725, 976 P.2d 1229 (1999).
Furthermore, there is no need to modify the "same criminal conduct" analysis to further the Legislative intent of severely punishing firearms crimes. Haddock's case provides an illustrative example of the effects of other provisions of the Hard Time for Armed Crime initiative. His minimum total sentence for the same conduct, assuming an offender score of 6, increased from 26 to 98 months upon enactment of the initiative. Compare RCW 9.94A.310-.320 (1994), with RCW 9.94A.310-.320 (1996).

III.
In conclusion, the same criminal intent was required to support Haddock's convictions for possession of stolen firearms and possession of stolen property. Furthermore, these offenses were committed at the same time and place, and involved the same victim. Therefore, all of the offenses are the "same criminal conduct." The Court of Appeals erred in concluding that Haddock's offender score was seven. We find that Haddock's convictions should be separated into two "sets," and his offender score should thus be six. The Court of Appeals is reversed and the case is remanded to the sentencing court for resentencing based on an offender score of six.
GUY, C.J., SMITH, TALMADGE, and IRELAND, JJ., concur.
MADSEN, J. (concurring)
I agree with the majority's view that Mario Haddock's convictions for possession of stolen property and possession of stolen firearms encompass the same criminal conduct. To encompass same criminal conduct, multiple *739 offenses must share the same criminal intent, be committed at the same time and place, and involve the same victim. RCW 9.94A.400(1)(a). The majority correctly concludes that Haddock's "single intent to possess stolen property motivated the conduct underlying all seven convictions," regardless of the fact that the conduct violated two different statutes. Majority at 737. It also correctly notes that all of the stolen property was possessed at the same time and place. Finally, the majority finds that the crimes of possession of stolen property and possession of stolen firearms involved the same victim, the Chrismans, owners of the property and firearms. Although I agree that these crimes involved the same victim, I believe that the victim of possession of stolen property, firearms or otherwise, is society at large, not the owner. Accordingly, I concur in the result reached by the majority.
To convict for the crime of either possession of a stolen firearm, RCW 9A.56.310, or possessing stolen property, RCW 9A.56.150, it is not necessary to allege or prove who owned the property; nor is it necessary that the State prove that the defendant stole the property. Rather, the State need only allege and prove that the property or firearm was stolen. While there may be a "victim" in the general sense that someone other than the defendant owned the property, ownership by a particular person is not an element of either crime. State v. Rogers, 30 Wash.App. 653, 638 P.2d 89 (1981). The defendant may be convicted of possessing stolen property or stolen firearms without proof that he knew who stole the property or from whom it was taken.
It is apparent that possession of stolen property statutes are intended to discourage the transfer of property after it has been stolen, regardless of its source. By criminalizing this conduct the Legislature is attempting to protect society as a whole by punishing persons who provide a market for stolen goods. Although these statutes indirectly benefit the owners of property, the focus is on punishing the acquisition of stolen property. I would hold that the victim of a crime involving possession of stolen property, including firearms, is society and not the owner of any particular item.
This view is also supported by RCW 9A.56.010(18)(d) (1999) which authorizes aggregating possession counts specifically when the property involved belongs to different people:
Whenever any person is charged with possessing stolen property and such person has unlawfully in his possession at the time the stolen property of more than one person, then the stolen property possessed may be aggregated in one count and the sum of the value of all said stolen property shall be the value considered in determining the degree of theft involved.
This court has also held that where the possession of stolen property, albeit acquired on several occasions from different individuals, was pursuant to one offer and all part of one transaction, it amounts to only one crime. State v. Ray, 62 Wash. 582, 114 P. 439 (1911). Instead of looking to the owner of property, the court properly focused on the transaction by which the defendant acquired the property.
The other difficulty I see with the majority's view that the victim of possession of stolen property is the owner a practical one: whether stolen property originally belonging to one owner or multiple owners is a mere fortuity. Under the majority's view, a defendant who possesses stolen property which was originally owned by multiple persons will be punished more severely than the defendant who possesses property belonging to only one owner, even though neither defendant stole the property or actually knew who owned the property. When coupled with the prosecutor's discretion to aggregate counts, the unfairness of this result is even more obvious.
Putting aside questions of equal treatment, the anomaly created by the majority's analysis does not further the goals of the SRA: ensuring that punishment is proportionate to the seriousness of the crime, and protecting the public. State v. Dunaway, 109 Wash.2d 207, 743 P.2d 1237, 749 P.2d 160 (1988). As this court recognized in State v. Calle, 125 Wash.2d 769, 781-82, 888 P.2d 155 (1995), the legislative plan under RCW 9.94A.400 (1)(a), *740 "same criminal conduct", intentionally limits the consequences where a single act may result in multiple convictions. As one writer observes, "[t]he SRA's same criminal conduct exception represents a ... desire, on the part of the Washington Legislature, to avoid unfair cumulative punishment." Joseph P. Bennett, The "Same Criminal Conduct" Exception of the Washington Sentencing Reform Act: Making the Punishment Fit the CrimesState v. Collicott, 112 Wash.2d 399, 771 P.2d 1137 (1989), 65 Wash. L.Rev. 397, 398 (1990). By viewing society as the victim of the crime of possession of stolen property, rather than the owner of the property, this court can avoid the unfair cumulative punishment which the "same criminal conduct" exception is designed to guard against.
Because I believe the victim of possession of stolen property is society as a whole, I would also take a different approach to Haddock's argument that possession of stolen firearms and unlawful possession of a firearm constitute the same criminal conduct. Without discussion, the majority says that the crime of unlawful possession of a firearm and the crime of possession of stolen firearms can never constitute "same criminal conduct" because possession of a firearm victimizes the general public while the victim of the crime of possession of stolen firearms is the owner of the firearms. Majority at 736. For the reasons stated above, I disagree. Nevertheless, the majority's conclusion, that unlawful possession of firearms and possession of stolen firearms do not encompass same criminal conduct, is correct. This is so because the objective intent to possess stolen property, whether it is firearms or computers, is different from the objective intent of a felon to possess firearms. Unlawful possession of a firearm is a status crime. Possession of a firearm by a felon is a crime whether the firearm is stolen or not. Thus, the objective intent of unlawful possession of firearms is not to possess stolen property, but rather to be in possession of a firearm when in the status of felon. Again, while I agree with the majority's conclusion that these crimes do not encompass same criminal conduct I do so because of the difference in objective intent.
Finally, the majority incorrectly states that under my analysis a trial court could not order restitution or restoration of the Chrismans' property to them. Majority at 737. The majority apparently overlooks this court's decision that immediate victims of crime are not the only persons entitled to restitution. State v. Davison, 116 Wash.2d 917, 920-21, 809 P.2d 1374 (1991). In Davison, the court held that a city which had no legal obligation to pay wages to a fireman unable to work because of injuries from an assault was nevertheless a victim within the meaning of the restitution statute and entitled to restitution for the amounts paid. In the course of its discussion, the court noted that restitution had been awarded to a state agency for the gambling losses of an undercover detective, State v. Forbes, 43 Wash. App. 793, 719 P.2d 941 (1986), to the widow and children of the victim of a negligent homicide, State v. Barr, 99 Wash.2d 75, 658 P.2d 1247 (1983), and to a insurance company to reimburse for payments made for losses sustained as a result of burglary, State v. Barnett, 36 Wash.App. 560, 675 P.2d 626 (1984). The court emphasized that the restitution statute is to be interpreted broadly to allow restitution, and should not be given an overly technical construction which would permit a defendant to avoid just punishment. Davison, 116 Wash.2d at 920, 922, 809 P.2d 1374. Given the broad powers of restitution granted by the Legislature, id. at 920, 809 P.2d 1374, and the awards of restitution approved in Davison, the analysis in this concurring opinion poses no danger that people like the Chrismans would be deprived of restitution or return of their property.
SANDER and JOHNSON, JJ., concur.
MUNSON, J.[*] (dissenting).
I believe the proper offender score is seven.
I agree the property of the six rifles and one computer taken in the burglary of the *741 Chrisman's home meets the definition of the "same criminal" conduct and reduces the "three sets" of crime to "two sets."
I disagree with reading the "two sets" to an offender score of one based on an issue of intent. The majority holds in part "Haddock's single intent to possess stolen property motivated the conduct underlying all seven counts." Majority at 737. The seven counts include six stolen rifles and one stolen computer. The other charge relates to a convicted felon possessing firearmssix stolen rifles and two handguns. The six rifles are the same rifles stolen from the Chrismans.
While I go along with the six rifles having been counted in the additional offender score of one, I do not agree that the two handguns are within that score. There is no evidence the handguns were taken as part of the burglary loot. Nor do they involve the same victims, the Chrismans. The court says "the victims of Haddock's crimes of possession of stolen firearms ... and stolen property were the owners ... the Chrismans." Majority at 736.
The court also says "the victim of the offense of unlawful possession of a firearm is the general public." Majority at 736.
To meet the definition of "the same criminal conduct" the statute requires "two or more crimes that require the same criminal intent, committed at the same time and place, and involve the same victims." RCW 9.94A.400(1). The court has also said that if any of these elements are missing, the offenses must be individually counted toward the offender score. The majority also agrees that Haddock's convictions of unlawful possession of a firearm and possession of stolen firearms do not encompass the same criminal conduct because the respective victim of each crime is different. Here, while we do not have missing elements, we do have different victims. I would add one additional offender score for a felon possessing firearms, namely the two handguns. Thus we have two sets of crimes which will equate with two additional offender scores, rather than one. When added to Mr. Haddock's history of an offender score of five, the proper offender score should be seven. I would remand this case to the trial court for resentencing.
NOTES
[1] Haddock's sentence of 186 months was based on concurrent 102-month sentences for each of the 8 counts of unlawful possession of firearms, which sentences were ordered to run consecutive to concurrent 84-month sentences for each of the 6 counts of possession of stolen firearms. These sentences were ordered to run concurrently to a 50-month sentence for the charge of possession of stolen property.
[2] Though the dissent takes issue with this calculation, the plain language of the statute requires it. We note with interest that the guidance offered by the Washington State Sentencing Guidelines Commission, in the multiple offense sentencing example, would lead to a similar conclusion:

An offender was convicted of one count of First Degree Theft and one count of Forgery.... The criminal history consisted of one conviction for Second Degree Burglary.... [T]he theft and forgery must be separately scored. The prior burglary and the current forgery are included in the offender score for the theft, resulting in an offender score of two.... The prior burglary and the current theft are included in the offender score for the forgery, resulting in an offender score of two....
SENTENCING GUIDELINES COMM'N, ADULT SENTENCING GUIDELINES MANUAL 1999, at I-13.
Similarly, no less authority than Professor David Boerner, in his treatise, SENTENCING IN WASHINGTON gives the following sentencing example applicable to a former version of RCW 9.94A.400(1)(a):
In determining the offender score for Count I, the convictions in Counts II and III are considered as criminal history, as if they had occurred at some time in the past.... For Count II, the convictions in Count I and Count III are included as criminal history; for Count III, the convictions in Counts I and II are included.
DAVID BOERNER, SENTENCING IN WASHINGTON 5-16 (1985).
[3] State v. Collicott, 112 Wash.2d 399, 404, 771 P.2d 1137 (1989).
[4] RCW 9A.56.310(4) provides: "The definition of `possessing stolen property' ... under RCW 9A.56.140 shall apply to the crime of possessing a stolen firearm."
[5] The Williams Court of Appeals relied on State v. Burns, 114 Wash.2d 314, 788 P.2d 531 (1990), for the proposition that offenses must further each other to constitute "same criminal conduct." Williams, 85 Wash.App. at 513, 933 P.2d 1072. We stated this "reliance on Burns [was] misplaced and conflict[ed] with Porter." Williams, 135 Wash.2d at 368, 957 P.2d 216.
[6] Laws of 1995, ch. 129, §§ 1-23 (Initiative Measure No. 159). The Hard Time for Armed Crime initiative was passed by the people and enacted, without amendment by the Legislature. State v. Brown, 139 Wash.2d 20, 25, 983 P.2d 608 (1999). One stated intent behind this initiative was to severely punish firearms crimes. See Laws of 1995, ch. 129, § 1 (stating findings and intent of initiative).
[7] Laws of 1998, ch. 235, § 2 added subsection (1)(c) relating to serving consecutive sentences for crimes involving both possession of a firearm and theft of a firearm or possession of a stolen firearm; Laws of 1987, ch. 456, § 5 codified the present three-part definition of "same criminal conduct" in RCW 9.94A.400(1)(a); Laws of 1986, ch. 257, § 28 rewrote the section to read substantially as it now appears.
[8] With respect to vehicular homicide, the Legislature has shown its willingness to modify the "same criminal conduct" analysis. See Laws of 1996, ch. 199, § 3; Laws of 1987, ch. 456, § 5.
[*] Judge Munson is serving as a justice pro tempore of the Supreme Court pursuant to Const. Art. 4 § 2(a) (amend.38).