[Nos. 54986-3-I; 54987-1-I.   Division One.   January 9, 2006.]

THE STATE OF WASHINGTON, *Appellant*, v. JEFFREY LYNN FISHER, *Respondent*.

---

[17] *See* RCW 2.06.040.

*Norm Maleng, Prosecuting Attorney,* and *James M. Whisman, Deputy,* for appellant.

*Cheryl D. Aza* (of *Washington Appellate Project*), for respondent.

¶1 Cox, C.J. — The primary issue that we decide here is what act or course of conduct the legislature has defined as punishable for identify theft—the "unit of prosecution."[1] We

---

[1] *State v. Adel,* 136 Wn.2d 629, 634, 965 P.2d 1072 (1998).

also decide whether the trial court properly exercised its discretion when it concluded that convictions for two separate counts of bail jumping constituted the same criminal conduct. Finally, we address another sentencing issue regarding the community placement status of Jeffrey L. Fisher.

¶2 Here, the "unit of prosecution" is Fisher's possession, with the requisite intent, of a means of identification or financial information of each victim. Furthermore, Fisher's two separate acts of bail jumping, separated by four months, do not constitute the same criminal conduct for purposes of sentencing. Finally, the determination whether Fisher was on community placement at the relevant time must be determined beyond a reasonable doubt by a jury, provided Fisher did not waive that issue below.[2] We reverse the sentence and remand for resentencing.

¶3 In March 2003, Fisher was arrested and charged with possession of methamphetamine. Fisher posted bail and was later charged with two additional counts of bail jumping when he failed to appear on two different occasions. A jury convicted Fisher of all three charges.

¶4 In May 2003, Fisher was arrested for driving with a suspended license. A search incident to arrest revealed multiple pieces of identification, checks, and account numbers, belonging to several different people, in his possession. The State charged Fisher with one count of second degree identity theft of Josiah Erickson and one count of second degree identity theft of Ryan Dubois for possession of each victim's means of identification or financial information.[3]

---

[2] *State v. Jones*, 126 Wn. App. 136, 144, 107 P.3d 755, *review granted*, 155 Wn.2d 1017, 124 P.3d 659 (2005).

[3] First and second degree identity theft, defined by former RCW 9.35.020 (2002), states in relevant part:

(2)(a) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony.

¶5 Additional charges against Fisher included numerous counts of possessing stolen property in the first and second degree and forgery. Fisher pleaded guilty to the two counts of second degree identity theft in exchange for the State dropping the remaining six counts.

¶6 The plea agreement reflected the State's calculation that Fisher's offender score was seven. At Fisher's sentencing hearing, he successfully argued that the "unit of prosecution" for identity theft is "use," not "possession." The trial court counted the two identity theft convictions as one for purposes of scoring.[4] The trial court also ruled that Fisher's two bail jumping convictions constituted the same criminal conduct. Finally, the court added one point to Fisher's offender score based on Fisher's stipulation that he was on community placement at the time of his crimes.

¶7 The State appeals the judgment and sentence scoring the two identity thefts as one point and the two bail jumping convictions as one point. Fisher cross-appeals the one point added for community placement.

## UNIT OF PROSECUTION—IDENTITY THEFT

¶8 The State argues that the "unit of prosecution" for identity theft in this case is Fisher's possession, with the requisite intent, of a victim's means of identification or financial information. We agree.

■ ■ ¶9 "When a defendant is convicted of multiple violations of the same statute, the double jeopardy analysis focuses on what the legislature intends as the 'unit of

---

(b) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained shall constitute *identity theft in the second degree*. Identity theft in the second degree is a class C felony.

(Emphasis added.)

[4] The trial court reduced Fisher's offender score from six to five, apparently omitting the additional community placement point. The trial court further reduced Fisher's offender score from five to four after finding the two bail jumping convictions constituted the same criminal conduct.

prosecution' . . . ."[5] In order to determine the "unit of prosecution," the first step is to look at the statute.[6] The plain meaning of the words of the statute determines its construction.[7] Only if the statute is ambiguous do we resort to aids of construction, such as legislative history.[8] If the legislature has failed to indicate the "unit of prosecution" in a criminal statute, the statute is ambiguous and the rule of lenity applies.[9] Statutory construction is reviewed de novo.[10]

▮ ¶10 Former RCW 9.35.020, the identity theft statute, stated in relevant part:

(1) No person may knowingly *obtain, possess, use, or transfer* a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(2)(a) *Violation of this section* when the accused or an accomplice *uses the victim's* means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute *identity theft in the first degree.* Identity theft in the first degree is a class B felony.

(b) *Violation of this section* when the accused or an accomplice *uses the victim's* means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained shall

---

[5] *State v. Leyda,* 122 Wn. App. 633, 636, 94 P.3d 397 (2004), *review granted,* 153 Wn.2d 1023 (2005).

[6] *Adel,* 136 Wn.2d at 634.

[7] *Ass'n of Wash. Bus. v. Dep't of Revenue,* 155 Wn.2d 430, 441, 120 P.3d 46 (2005).

[8] *Id.* at 441 n.10.

[9] *Adel,* 136 Wn.2d at 634-35.

[10] *State v. Berry,* 129 Wn. App. 59, 69, 117 P.3d 1162 (2005).

constitute *identity theft in the second degree*. Identity theft in the second degree is a class C felony.[11]

¶11 Subsection (1) of the above statute defines the punishable acts that the legislature has prohibited. The plain words of that subsection include *possession* of either a means of identification or financial information of another person, with the requisite intent, as one of several punishable acts. The other prohibited acts include obtaining, using, or transferring, with the requisite intent, either a means of identification or financial information of another.

¶12 Subsections (2)(a) and (b) define the degrees of identity theft, respectively, as either in the first or second degree. But neither of these two subsections modifies the plain meaning of subsection (1), which defines the prohibited acts. Thus, under the facts of this case, the "unit of prosecution" is Fisher's possession, with the requisite intent, of a means of identification or financial information of each victim.[12]

¶13 Fisher argues that under *State v. Leyda*,[13] and the identity theft statute, the "unit of prosecution" is "use," not "possession." He misreads *Leyda*.

¶14 There, the defendant was charged with and convicted of four counts of second degree identity theft for using the victim's stolen credit card four times on four different occasions.[14] He argued that under the statute, the "unit of prosecution" is based on the number of pieces of financial information or means of identification "obtained" or "possessed," not on the "use" of such information or identification. This court rejected the defendant's reading, stating that under such a reading of the statute,

---

[11] Former RCW 9.35.020 (2002) (emphasis added).

[12] *See State v. Graham*, 153 Wn.2d 400, 406, 103 P.3d 1238 (2005) (When the legislature prohibits conduct against *"another* person," a separate offense is committed for each individual person that is placed in danger.).

[13] 122 Wn. App. 633, 94 P.3d 397 (2004).

[14] *Id.* at 635.

[o]ne who possessed a sack of stolen credit cards, intending to use them but never doing so, would commit as many crimes as the sack held cards, while the thief who possessed only one card, but used it over and over, would commit only one crime. The identity thief would thus have a strong incentive to use a stolen card as often and for as much as possible, knowing that he or she could be charged with only one count. We do not believe the legislature intended these results.[15]

Nothing in *Leyda* suggests that "use" is the sole "unit of prosecution" under the identity theft statute. As this court clarified in *State v. Berry*:

When we held [in *Leyda*] that the unit of prosecution was the "use" of the means of identification, we were not commenting on the difference between "using" a means of identification and "obtaining" or "possessing" a means of identification. Instead, we were selecting use as the unit of prosecution rather than the number of pieces of identification. The holding in *Leyda* is not informative to our analysis here.[16]

"Use" is one "unit of prosecution" under the identity theft statute. But under the facts of this case, it is clear that "possession" of a means of identification or financial information of another is also a "unit of prosecution."[17]

¶15 Here, the trial court did not have the benefit of *Berry* and erroneously relied on *Leyda* to conclude that the only "unit of prosecution" for identity theft is "use," not "possession." The plain words of the statute show otherwise. The court's conclusion resulted in its erroneous scoring of Fisher's two identity theft convictions as one point rather than two. Proper scoring requires the two convictions to be scored separately at resentencing following remand.

¶16 Fisher further asserts that if this court does not agree that "use" is the only "unit of prosecution," then the rule of lenity applies. We reject this assertion.

¶17 The rule of lenity applies where a statute is ambiguous, and any ambiguity must be resolved in the criminal

---

[15] *Id.* at 637-38.

[16] 129 Wn. App. at 71.

[17] Former RCW 9.35.020(1) (2002).

defendant's favor.[18] Former RCW 9.35.020 is not ambiguous.[19] The words of the statute are quite clear in defining the prohibited act of possession of the specified items with the requisite intent. Therefore, the rule of lenity does not apply.

## SAME CRIMINAL CONDUCT

¶18 The State argues that Fisher's two bail jumping convictions did not arise out of the same criminal conduct because the crimes occurred at different times. We agree.

¶19 If two current offenses encompass the same criminal conduct, then those current offenses will count as only one point in calculating the offender's score.[20] The same criminal conduct requires two or more crimes to involve (1) the same criminal intent, (2) the same time and place, and (3) the same victim.[21] "If any one of these elements is missing, the offenses must be individually counted toward the offender score."[22] A sentencing court's determination of same criminal conduct will be reversed only for a clear abuse of discretion or misapplication of law.[23]

¶20 We need only address the second prong of the test because it is dispositive. The question is whether the two bail jumping crimes occurred at different times.

¶21 It is undisputed that Fisher was out of jail on bond when he failed to appear in June 2003. He also failed to appear in October 2003. A jury convicted him of two counts of bail jumping based on these failures to appear.

---

[18] *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 249-50, 955 P.2d 798 (1998).

[19] *Berry*, 129 Wn. App. at 70.

[20] Former RCW 9.94A.400(1)(a) (2001); *State v. Haddock*, 141 Wn.2d 103, 108, 3 P.3d 733 (2000).

[21] *Haddock*, 141 Wn.2d at 109-10.

[22] *Id.* at 110.

[23] *Id.*

¶22 The two failures to appear, separated by almost four months, did not occur at the "same time." The trial court appears to have based its ruling on the fact that "the defendant failed to appear for two related close-in-time proceedings and in the same case governed by the same bond." Neither the same cause number of a case nor the same bond are relevant considerations for purposes of the controlling test. And the substantial time difference simply does not meet the test.

¶23 Fisher relies on *State v. Porter*[24] to argue that the offenses do not need to be simultaneous and the trial court was within its discretion in determining that the bail jumping offenses arose out of the same criminal conduct. That case is distinguishable.

¶24 In *Porter*, the court held that two drug sales that occurred 10 minutes apart satisfied the "same time" element of same criminal conduct.[25] In doing so, the court rejected a "simultaneity requirement" with regard to a finding of "same time" for purposes of the governing test. A time difference of 10 minutes is vastly different from one of four months. Thus, *Porter* is of no help to Fisher in this case.

¶25 The trial court incorrectly ruled that the two bail jumping convictions were the same criminal conduct.

¶26 We reverse the sentence and remand for resentencing.

¶27 The remaining issues of this opinion are not of precedential importance. Accordingly, pursuant to RCW 2.06.040, the remainder of this opinion is unpublished.

ELLINGTON and APPELWICK, JJ., concur.

---

[24] 133 Wn.2d 177, 942 P.2d 974 (1997).

[25] *Id.* at 183.