

2013 JUL 29 PM 12: 14

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

              Respondent,

v.

GERARDO MARIN ANDRES,

              Appellant.

No. 70342-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 29, 2013

LEACH, C.J. — Gerardo Marin Andres appeals his judgment and sentence for multiple offenses. He challenges the sufficiency of the evidence to support his first degree burglary conviction with firearm enhancement, his offender score calculation, and the imposition of legal financial obligations. Because substantial evidence supports the challenged conviction, the court properly calculated his offender score, and substantial evidence supports the trial court's finding about his ability to pay legal financial obligations, we affirm.

Background

Gerardo Marin Andres and several associates burglarized three houses in Pierce County. The property taken in the three burglaries included electronic equipment, jewelry, clothes, and several firearms. From the house of Iolani Menza, the burglars took a loaded shotgun in a padded zipper case and a box of ammunition. From Joseph Kraut's house, they stole a locked gun safe

containing several pistols, including his police-issued duty weapon, and several items of expensive jewelry he had purchased as gifts for his wife over the years.

Marin Andres admitted to participating in the burglaries. A jury found him guilty of one count of first degree burglary, three counts of residential burglary, one count of trafficking in stolen property, two counts of first degree theft, one count of second degree theft, and four counts of theft of a firearm. For sentencing purposes, the court merged the first count of residential burglary with the related first degree burglary charge and sentenced Marin Andres to 87 months for the first degree burglary, the minimum standard range sentence, plus a mandatory 60-month firearm enhancement. The court imposed standard range sentences for the other convictions, to run concurrently with the burglary sentence. Marin Andres appeals.

## Analysis

First, Marin Andres challenges the sufficiency of the evidence supporting the first degree burglary conviction and the firearm enhancement. When reviewing the sufficiency of evidence, we view the evidence in the light most favorable to the State, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] A party challenging the sufficiency of evidence admits the truth of the evidence and any reasonable inferences from it.[2]

---

[1] State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).
[2] State v. Johnson, 173 Wn.2d 895, 900, 270 P.3d 591 (2012).

The elements of first degree burglary include, among other things, that the defendant was armed with a deadly weapon or assaulted another person while entering, within, or in immediate flight from a building.[3]  For purposes of the burglary statute, a firearm is a deadly weapon per se.[4]  When first degree burglary involves a firearm taken in the course of a burglary, "no analysis of willingness or present ability to use a firearm as a deadly weapon" is necessary.[5]  "When the defendant had actual possession of a firearm, sufficient evidence supports a first degree burglary conviction despite the firearm being unloaded and no evidence showing that defendant intended to use it."[6]

To enhance Marin Andres's sentence in this case, the State had to prove that he or an accomplice was armed with a firearm during the burglary.  A defendant is armed with a firearm if the firearm is easily accessible and readily available for either offensive or defensive use.[7]

Marin Andres argues that the State failed to prove that he was armed because it did not show a nexus between the firearm and the crime.  He relies on State v. Brown,[8] in which the court determined that while the defendants had constructive possession of a rifle during the course of a burglary, there was no

---

[3] RCW 9A.52.020.

[4] In re Pers. Restraint of Martinez, 171 Wn.2d 354, 365, 256 P.3d 277 (2011).

[5] State v. Hall, 46 Wn. App. 689, 695, 732 P.2d 524 (1987).

[6] State v. Hernandez, 172 Wn. App. 537, 543-44, 290 P.3d 1052 (2012) (citing State v. Faille, 53 Wn. App. 111, 114-15, 766 P.2d 478 (1988)), review denied, No. 88353-0 (Wash. July 11, 2013).

[7] State v. Brown, 162 Wn.2d 422, 431, 173 P.3d 245 (2007).

[8] 162 Wn.2d 422, 433, 173 P.3d 245 (2007).

evidence that they intended or were willing to use the weapon to further the crime.

Marin Andres's accomplices unsuccessfully made this identical argument in State v. Hernandez.[9] Division Two rejected it, noting a key distinction between Brown and this case, the fact of actual possession. In Brown, the burglars simply moved a rifle a short distance from a closet to the top of a nearby bed, while here the defendants took actual possession of the firearms and removed them from the premises. As the court explained in State v. Schelin,[10] the nexus requirement becomes necessary in cases of constructive possession to assure that the mandatory sentencing enhancements do not infringe on citizens' constitutional right to bear arms. In most actual possession cases, these fears are unwarranted. As our Supreme Court noted in State v. Easterlin,[11] in cases of actual possession, "it will rarely be necessary to go beyond the commonly used 'readily accessible and easily available' instruction."

Marin Andres also challenges his offender score calculation. He argues that the court should have considered the two crimes—first degree theft and theft of a firearm convictions relating to the jewelry and firearms taken from the Kraut house—"same criminal conduct" for sentencing purposes.[12] His argument fails.

---

[9] 172 Wn. App. 537, 544-45, 290 P.3d 1052 (2012), review denied, No. 88353-0 (Wash. July 11, 2013).

[10] 147 Wn.2d 562, 574-75, 55 P.3d 632 (2002).

[11] 159 Wn.2d 203, 209, 149 P.3d 366 (2006).

[12] The State contends that Marin Andres waived this challenge by stipulating to his offender score calculation below. However, while the agreement was signed on November 23, 2011, it was not filed with the court until January 13, 2012. At sentencing hearings on November 23, December 9, and

If, when calculating an offender score, "the court enters a finding that some or all of the current offenses encompass the same criminal conduct[,] then those current offenses shall be counted as one crime."[13] The court will find that criminal conduct is the same only when crimes occurred (1) with the same criminal intent, (2) at the same time and place, and (3) involved the same victim.[14] Application of the same criminal conduct statute involves both factual determinations and the exercise of the trial court's discretion.[15] Therefore, we generally defer to the sentencing court's determination of "'same criminal conduct'" and disturb it only for "'clear abuse of discretion or misapplication of the law.'"[16]

The trial court determined that the Kraut break-in involved two crimes with different victims—the weapons in the safe belonged to Kraut and the jewelry stolen belonged to his wife. Thus, the convictions were not same criminal conduct. To support his argument that the two crimes were the same criminal conduct, Marin Andres points to his successful argument that the convictions for first degree theft and theft of a firearm from the Menza house were the same

---

January 13, neither the parties nor the court indicated that Marin Andres had stipulated to the correctness of the State's calculation. Instead, the parties engaged in an ongoing conversation with the court over the course of three months to determine the proper treatment of the theft convictions. After engaging in that debate, the State cannot now simply argue that the issue was waived prior to the start of any of those sentencing hearings.

[13] RCW 9.94A.589(1)(a).

[14] State v. Haddock, 141 Wn.2d 103, 109-10, 3 P.3d 733 (2000).

[15] State v. Nitsch, 100 Wn. App. 512, 523, 997 P.2d 1000 (2000).

[16] Haddock, 141 Wn.2d at 110 (quoting State v. Elliott, 114 Wn.2d 6, 17, 785 P.2d 440 (1990)).

criminal conduct. He contends that all the items taken from the Kraut residence were community property and that the court had no basis for distinguishing a husband and wife as separate owners of different items.

We disagree. Among the many types of personal property that spouses may own as part of their marital community, jewelry is particular. "[J]ewelry or articles of personal adornment, acquired after marriage with community funds, but worn and used solely by the wife, will be held to be the separate property of the wife by gift from the husband upon comparatively slight evidence."[17] Here, Kraut testified he purchased much of the jewelry as a gift for his wife. The trial court did not abuse its discretion by finding two different victims of the thefts.

Lastly, Marin Andres challenges the court's imposition of $2,800 in legal financial obligations (LFOs). He claims that the court erred by imposing the LFOs without first making a finding that he had the present or future ability to pay. The court imposed a $500 crime victim penalty assessment, $100 DNA (deoxyribonucleic acid) database fee, $2,000 court-appointed attorney fees and defense costs, and a $200 filing fee. The crime victim penalty and DNA collection fees are mandatory.[18] The court must impose these mandatory fees regardless of a defendant's financial circumstances.[19]

---

[17] Johnson v. Dar Denne, 161 Wash. 496, 497, 296 P. 1105 (1931).

[18] RCW 7.68.035(1)(a); RCW 43.43.7541.

[19] See, e.g., State v. Thompson, 153 Wn. App. 325, 336-39, 223 P.3d 1165 (2009) (DNA fee is mandatory and imposed regardless of hardship); State v. Williams, 65 Wn. App. 456, 460-61, 828 P.2d 1158, 840 P.2d 902 (1992) (victim penalty assessment "is mandatory and requires no consideration of a defendant's ability to pay" at sentencing).

The sentencing court has discretion to impose court costs under RCW 10.01.160. But in order to do so, the court must at least consider the present and likely future financial resources of the defendant and the burden that the imposition of costs will impose.[20] Although the law does not require the court to enter findings regarding a defendant's ability to pay before imposing financial obligations, here the trial court made the following finding:

> The court has considered the total amount owing, the defend's [sic] past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.753.

Substantial evidence supports the trial court's finding about Marin Andres's future ability to pay. He was employed when interviewed by the police about the crimes. He presented no evidence of any disability that would limit his ability to work in the future. We also note that the court must again consider his ability to pay if in the future the State seeks to impose some additional penalty for failure to pay.[21] Therefore, we affirm the nonmandatory LFOs imposed.

---

[20] Former RCW 10.01.160 (3) (1995) ("The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."); State v. Baldwin, 63 Wn. App. 303, 308-12, 818 P.2d 1116, 837 P.2d 646 (1991); State v. Calvin, No. 67627-0-I, 2013 WL 2325121, at *11 (Wash. Ct. App. May 28, 2013).

[21] State v. Blank, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997).

Conclusion

Drawing all conclusions and inferences most favorably to the State, the State presented sufficient evidence that Marin Andres or an accomplice was armed with a firearm during the burglaries. Further, the court correctly calculated the offender score. Finally, the court considered Marin Andres's ability to pay when imposing LFOs and substantial evidence supports its findings on this issue. We affirm.

Leach, C.J.

WE CONCUR:

Cox, J.