FILED
COURT OF APPEALS
STATE OF WASHINGTON

2015 SEP 21 AM 9: 15



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73198-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| A.D.B., d.o.b. 10/14/98 | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 21, 2015 |
| | ) | |

VERELLEN, A.C.J. — A.B. appeals from a standard range disposition after he pleaded guilty to three felony charges. He contends that the juvenile court erred when it applied the Sentencing Reform Act of 1981 (SRA)[1] same criminal conduct test in determining that his prior adjudications for possession of a stolen laptop and possession of a controlled substance did not arise out of the same course of conduct under the Juvenile Justice Act of 1977 (JJA).[2] A.B. also argues that the court failed to exercise its discretion when it categorically refused to consider his request for a manifest injustice disposition below the standard range.

In State v. Contreras, our Supreme Court concluded that the test for the same criminal conduct under the SRA governs the analysis of the same course of conduct under the JJA.[3] Two offenses encompass the same criminal conduct under the SRA

---

[1] Ch. 9.94A RCW.

[2] Ch. 13.40 RCW.

[3] 124 Wn.2d 741, 880 P.2d 1000 (1994).

only if they involve the same victim.[4]  Because A.B.'s prior adjudications did not involve the same victim, his argument fails.  Furthermore, because the court expressly considered A.B.'s cognitive impairments and other mitigating factors in its determination that a downward exceptional sentence was not warranted, we conclude that the standard range disposition was neither a failure to exercise discretion nor an abuse of discretion.  Accordingly, we affirm.

## FACTS

Around 8:00 p.m. on April 2, 2014, then 15-year-old A.B. and a group of approximately nine other teenagers surrounded three foreign exchange students leaving Northgate Mall.[5]  In view of security cameras, one member of the group brandished a knife and robbed one of the students while A.B. violently shoved another student who was attempting to stop the robbery.  After the student being robbed relinquished his iPhone, A.B. again confronted the student he shoved and repeatedly attempted to punch him in the head.  The students were able to escape, but were followed by A.B. and the group to Northgate Transit Center, where one of the students called 911.  A.B. and the group eventually fled to escape from responding police officers.

Around 10:00 that same evening, A.B. and four of the group members walked past a teenager who was using an iPad while waiting for a bus.  One of the group

---

[4] RCW 9.94A.589(1)(a).

[5] A.B. stipulated as part of his guilty pleas that the juvenile court could use the certifications for determination of probable cause to find a factual basis for his pleas.  The facts are drawn from those certifications.

members stole the iPad and fled. The teenager chased him. Again in view of security cameras, A.B. and two of the group members ran after the teenager and pushed him to the ground. They repeatedly punched and kicked him, causing swelling, contusions, and bleeding to the teenager's face, head, and hand. Afterwards, A.B. and the group members boarded a bus, where a fellow passenger who had witnessed the iPad robbery and heard the group bragging about it on the bus notified the driver. The police arrived and A.B. and the group were taken into custody.

The State charged A.B. with two counts of robbery in the second degree and one count of attempted robbery in the first degree. A.B. pleaded guilty to the charges. At his disposition hearing, A.B. asked the juvenile court to find that a prior felony adjudication for possession of a controlled substance and a prior misdemeanor adjudication for possession of stolen property in the third degree arose out of the same course of conduct under the JJA. Such a finding would have resulted in a rounding down of A.B.'s offender score from 2 to 1 and consequently, a reduction in his standard range sentence.[6]

The juvenile court found that the test for same course of conduct under the JJA, was the same as the test for same criminal conduct under the SRA, ruling:

> Therefore, all the elements under 9.94A.589 must be met. And that does require that there be a finding that [they] occurred at the same time, with the same intent, with identical victims. The victims here are not the same. [Possession of a controlled substance] is a drug offense which violates the laws of the community at large, and was charged as such. The [possession of stolen property] is for possession of [a] laptop. The

---

[6] A.B.'s prior history included three other misdemeanors, each counting .25 points towards his offender score.

court will not reduce the number of points. The points remain at 2, standard range of 52 to 65 [weeks] in each of the counts.[7]

Following the court's ruling, A.B. asked the juvenile court to instead impose a downward disposition of 15 to 36 weeks because the standard range disposition would effectuate a manifest injustice. Additionally, he asked that the court construct an alternative disposition whereby A.B. would serve his time in treatment in the community rather than in a Juvenile Rehabilitation Administration (JRA) facility.

A.B. acknowledged that he was asking for the equivalent of an "Option B" or "Option C" disposition,[8] for both of which he was statutorily ineligible, but he argued that the court had authority to construct such a disposition as a manifest injustice downward sentence because his cognitive and mental health issues significantly reduced his culpability for the offenses, a statutory mitigating factor.[9] A.B. also argued that "[t]he respondent's conduct neither caused nor threatened serious bodily injury or the respondent did not contemplate that his or her conduct would cause or threaten serious bodily injury," another statutory mitigating factor, applied because he "did not cause an injury."[10] Lastly, he argued that nonstatutory mitigating factors, including substance abuse and a lack of any meaningful adult supervision in recent years, justified a manifest injustice disposition below the standard range.

---

[7] Report of Proceedings (RP) (Jan. 9, 2015) at 31.

[8] RCW 13.40.0357.

[9] See RCW 13.40.150(3)(h)(iii) (addressing factors to be considered prior to entry of dispositional order, including the mitigating factor that "[t]he respondent was suffering from a mental or physical condition that significantly reduced his or her culpability for the offense though failing to establish a defense").

[10] Clerk's Papers at 54.

4

The juvenile court acknowledged that it had discretion to impose such a disposition and found that "the record does clearly show cognitive mental health challenges, as well as a history of substance abuse."[11] But the court expressed concern for community safety in light of the seriousness of A.B.'s crimes and determined that he would "remain a risk to the community until he receive[d] some modicum of services."[12] It concluded that a standard range disposition of 52 to 65 weeks at a JRA facility would not effectuate a manifest injustice and would instead appropriately rehabilitate A.B. and allow him to successfully transition back into the community.

A.B. appeals.

## ANALYSIS

A.B. argues that the juvenile court erred when it applied the SRA same criminal conduct test to determine that his prior offenses for the possession of a stolen laptop and possession of a controlled substance involved different victims and therefore did not arise out of the same course of conduct under the JJA. We find his argument unpersuasive.

The interpretation of a statutory provision is a question of law that this court reviews de novo.[13] The JJA provides that "when a juvenile 'is convicted of two or more charges arising out of the *same course of conduct*, only the highest charge from among these shall count as an offense'" for purposes of calculating the juvenile's criminal

---

[11] RP (Jan. 9, 2015) at 48.

[12] Id. at 49.

[13] State v. Haddock, 141 Wn.2d 103, 110, 3 P.3d 733 (2000).

history score.[14] But the legislature did not define "same course of conduct" and the phrase is not used elsewhere in the JJA or the SRA.[15]

However, the SRA does contain a similar provision. RCW 9.94A.589(1)(a) provides that "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." RCW 9.94A.589(1)(a) defines "same criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim."

In State v. Contreras, our Supreme Court analyzed the SRA's same criminal conduct provision and the JJA's same course of conduct provision in the context of construing the meaning of the phrase "single act" as used in a provision of the JJA that limited juvenile sentences for multiple crimes to 150 percent of the most serious offense when the offenses were committed "through a single act or omission."[16] The court reasoned that a single act should be consistent with the same course of conduct provision of the JJA, which in turn should not be read more narrowly than the SRA's definition of "same criminal conduct." The court expressly concluded that "[d]espite differences in terminology, the tests for determining whether the phrases 'same course of conduct' used in the [JJA] and 'same criminal conduct' used in the SRA are essentially the same."[17]

---

[14] Contreras, 124 Wn.2d at 746 (quoting former RCW 13.40.020(8)(a) (1977)).
[15] Id.
[16] Id. at 743-48.
[17] Id. at 748.

A.B. contends that this portion of the Contreras analysis is merely dicta. "'A statement is dicta when it is not necessary to the court's decision in a case' and as such is not binding authority."[18] Because that analysis was integral in arriving at the court's ultimate holding, we conclude that it was not dicta.

Next, relying on a concurring opinion in State v. Haddock, A.B. argues that his prior offenses meet the SRA's definition "same criminal conduct" because "the public at large was likewise 'victimized' by [his] illegal possession of someone else's property."[19] Because the majority in Haddock expressly rejected that proposition, we find no merit in his argument.[20]

A determination of same criminal conduct will not be disturbed absent an abuse of discretion or misapplication of the law.[21] For purposes of a same criminal conduct analysis, the victim of a possession of stolen property offense is the rightful owner of the property,[22] whereas the victim of an unlawful possession of a controlled substance offense is the general public.[23] Here, the victim of A.B's stolen property offense was the laptop's rightful owner, while the general public was the victim of his controlled

---

[18] Gabelein v. Diking Dist. No. 1 of Island County, 182 Wn. App. 217, 239, 328 P.3d 1008 (2014) (quoting Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 215, 304 P.3d 914 (2013)).

[19] Appellant's Br. at 12.

[20] Haddock, 141 Wn.2d at 111 ("While we recognize that all crimes victimize the public in a general sense, we are satisfied that these crimes directly inflicted specific injury on individuals.").

[21] State v. Graciano, 176 Wn.2d 531, 536, 295 P.3d 219 (2013).

[22] Haddock, 141 Wn.2d at 111 (victims of possession of stolen firearm counts were the owners of the firearms).

[23] Id. at 110-11; see also State v. Porter, 133 Wn.2d 177, 181, 942 P.2d 974 (1997); State v. Garza-Villarreal, 123 Wn.2d 42, 47, 864 P.2d 1378 (1993).

substance offense. Because the victims were not the same, the court's determination that A.B.'s prior offenses did not encompass the same course of conduct was not an abuse of discretion or a misapplication of the law.

Lastly, A.B. contends that the juvenile court failed to exercise its discretion because it categorically refused to consider his request for a manifest injustice disposition below the standard range. We disagree.

A "juvenile court may enter a manifest injustice finding and impose a downward exceptional disposition where the juvenile court finds by clear and convincing evidence that a standard range disposition would be detrimental to the goal of rehabilitating the juvenile offender, and such a disposition would not endanger the public."[24] A juvenile court's determination that a standard range disposition would effectuate a manifest injustice is reviewed for an abuse of discretion.[25]

Here, the juvenile court found that "the record does clearly show cognitive mental health challenges, as well as a history of substance abuse."[26] But expressly recognizing its discretion in imposing a downward exceptional disposition, the court determined:

> And I looked closely at the issues that [A.B.] faces, and they simply—they're horribly unfortunate, they're extremely challenging, but they're not exceptional. They are what this court deals with every day.
>
> *And the question really is, where will he and the community most benefit?* I do have concerns about community safety. These are extremely serious crimes. . . .

---

[24] State v. K. E., 97 Wn. App. 273, 282-83, 982 P.2d 1212 (1999).

[25] State v. Sledge, 133 Wn.2d 828, 844, 947 P.2d 1199 (1997).

[26] RP (Jan. 9, 2015) at 48.

> I have a different perspective on JRA then perhaps counsel does. And that is that there's always a risk of institutionalization. And I will not be naïve enough to say that that cannot occur. But I've also seen youth turn around. [A.B.] is in need of services. And is he going to be sufficiently stabilized and supported in the community that those services are going to be pursued, and that he does not remain a risk to the community prior to his receiving services, *and I don't think he does.*

> I think that he does remain a risk to the community until he receives some modicum of services. *JRA is set up so at the time that it believes that a youth has been sufficiently rehabilitated, that they will be transitioned to a group home, and will receive services in the community.* And that's the judgment that they make after a youth has been there for a certain period of time and has shown receptiveness and responsiveness to services.[27]

The record demonstrates that the court's observation that A.B.'s cognitive impairment and substance abuse issues were common among juvenile defendants was not a categorical refusal to consider his request for a manifest injustice disposition downward. Rather, it was an appropriate component of its ultimate determination that a downward exceptional sentence was not warranted. Having focused its analysis upon where A.B. and the community would most benefit, the court addressed its concerns for the public's safety given the seriousness of A.B.'s crimes and concluded that he would remain a risk to society until he received effective treatment. Thus, the court made an individualized determination that a standard range sentence at a juvenile facility would best provide A.B. treatment and would allow him to successfully transition back into the community.

We note that our Supreme Court recently held that a defendant's youthfulness, including the science supporting youthful impaired cognitive ability, can be a possible mitigating factor justifying an exceptional adult sentence below the standard sentence

---

[27] Id. at 49-50 (emphasis added).

range.[28] The court here reviewed and expressly considered A.B.'s cognitive impairments and other mitigating factors before focusing on the question of what was best for A.B. and for the community. We conclude that the court properly exercised its discretion in imposing a standard range disposition.

We affirm.

WE CONCUR:

_____

---

[28] State v. O'Dell, No. 90337-9, 2015 WL 4760476, at *9 (Wash. Aug. 13, 2015).