2014 NOV 17 AM 9: 29


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70653-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOHNNIE LEE WIGGINS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 17, 2014 |

SPEARMAN, C.J. — Johnnie Wiggins was convicted by a jury of second degree murder. Because the jury also found two aggravating factors, the trial court imposed an exceptional sentence of 360 months. Wiggins appeals, claiming that the trial court erred by failing to conduct the balancing analysis required by ER 609(b) before it admitted evidence of his 1999 convictions for possession of stolen property. The State concedes that the trial court erred, but argues the error was harmless. We agree with the State. We also reject Wiggins' claim that his two convictions of possession of stolen property should have been considered the "same criminal conduct" for the purposes of calculating his offender score. We affirm.

## FACTS

On December 24, 2011, Johnnie Wiggins went to the home of Prudence Hockley. He and Hockley had been romantically involved throughout the year. Wiggins testified that he had spent time with Hockley earlier in the day and had

wanted to come over to give her a Christmas gift. Hockley was also involved with Greg Brooks, who testified that he was at her home that evening. While Brooks was there, Wiggins called Hockley multiple times asking to come over, but she refused his requests.

Wiggins testified that he went to Hockley's house despite her protests. Once there, he noticed what he thought was Brooks' red truck parked in front. Wiggins called Hockley from his cell phone without letting her know that he was outside her house. When she told him he was crazy and hung up, Wiggins began knocking on the front door "like a madman." Verbatim Report of Proceedings (VRP) (06/04/13) at 22. Brooks testified that Hockley was alarmed and asked him to leave out the back door to avoid Wiggins.

Hockley's thirteen-year-old daughter MH was also home when Wiggins arrived. Neither one answered the door. When the knocking ceased, they thought Wiggins had left, until MH saw him heading around to the back of the house. Wiggins saw Brooks as he exited and they had a brief exchange, after which Brooks continued toward his truck.

Hockley told MH to stay inside and went out to talk to Wiggins. Wiggins admitted that he was angry with Hockley that evening and that he hit her and knocked her down. He testified that he started to leave and then came back when he saw that she hadn't gotten up. He saw that she was bleeding and encountered MH, who asked him what he had done to her mother. He testified that he told MH that it wasn't him but that Brooks did it, and then left the scene.

Brooks heard Hockley shouting at Wiggins and came back to the house. He saw Wiggins get into his car and drive away, while Hockley lay bleeding on the ground and MH was screaming and crying.

Hockley had received a massive head injury and was bleeding significantly. She was taken to Harborview Medical Center where she died the following day. She suffered severe blunt force trauma to her head and face, and had marks on her face and neck that were consistent with the sole of a shoe. She had extensive skull fractures, including displacement of the bones, which would have "require[d] force sort of along the lines of a high speed motor vehicle collision or a fall from some height." VRP (6/6/13) at 154.

Wiggins took the stand and testified in his defense. Before trial the State moved to introduce Wiggins' prior convictions for possession of stolen property in 1999 and robbery in 2001. Wiggins' counsel objected to the admission of the 1999 convictions under ER 609(b) because more than ten years had elapsed since the conviction or the release from confinement imposed for that conviction.

The possession of stolen property convictions arose when Wiggins was found in possession of a stolen Ford Explorer and a stolen credit card number, both belonging to Richard D. Bentz. Wiggins was apprehended after trying to use the stolen credit card and ID to check into a Bellevue hotel. The hotel manager contacted the credit card owner who advised her that his car, wallet, and other items had been stolen. The police arrived and upon Wiggins' arrest, he was in possession of numerous documents bearing the name Richard Bentz, including a passport. Wiggins pled guilty to two counts of possession of stolen property, one

for the car and the other for the credit card number. He was sentenced to thirty days partial confinement with twelve months of community supervision.

The trial court ruled that evidence of the 1999 convictions was admissible for impeachment if Wiggins testified, but in so doing, failed to determine on the record that the probative value of the convictions substantially outweighed their prejudicial effect.[1]

The jury found Wiggins guilty of second degree murder and also found the presence of two aggravating factors: that the crime was committed within sight or sound of Hockley's minor child and that the crime was part of an ongoing pattern of abuse over a prolonged period of time (see RCW 9.94A.537; RCW 9.94A.535(3)(h)(i)(ii).

At the sentencing hearing, the trial court calculated Wiggins' offender score to be five points — counting his 1997 Georgia conviction for robbery as one point, the 1997 Georgia conviction for aggravated assault as two points, and the 1999 Washington convictions for possession of stolen property as two points.[2] The standard range for an offender score of 5 and a seriousness level of 14 was 175-275 months. RCW 9.94A.510. The trial court imposed an exceptional

---

[1] The trial court appeared to be of the view that the evidence was admissible because in the years since the 1999 convictions, Wiggins had been incarcerated on unrelated matters. But under ER 609(b) time spent in confinement is only excluded from the ten year calculation if it is in connection with the conviction at issue. Even if the conviction is otherwise excludable under the rule it may still be admitted into evidence, but only if "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." ER 609(b).

[2] The trial court did not count Wiggins' other Georgia felony convictions for aggravated assault, theft by taking, and theft by shoplifting, because under RCW 9.94A.520, the comparable Washington offenses were not required to be included in the offender score.

sentence of 360 months based on Wiggins' offender score and the two aggravating factors. CP 158-165. On appeal, Wiggins argues that the trial court's admission of evidence regarding the 1999 convictions is reversible error. He also argues that the case should be remanded for resentencing because the trial court erred in calculating his offender score when it failed to find the two possession of stolen property counts constituted the "same criminal conduct."

DISCUSSION

Admissibility of Prior Convictions

"This court reviews the correct interpretation of an evidentiary rule de novo as a question of law." State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (citing State v. Walker, 136 Wn.2d 767, 771072, 966 P.2d 883 (1998)). "Once the rule is correctly interpreted, the trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." Id. (citing State v. Lough, 125 Wn.2d 847, 856, 889 P.2d 487 (1995)).

Wiggins argues that the trial court erred when it admitted the 1999 conviction without conducting the balancing analysis required by ER 609(b). He also disputes the trial court's interpretation and application of the ten year time period to his case. The State concedes that the trial court did not make the requisite findings to support admission of the evidence and we accept the State's concession. But the State argues that the error was harmless because Wiggins cannot demonstrate that the evidence had any effect on the outcome of the trial. We agree.

5

Violations of ER 609 are to be judged by the nonconstitutional standard of harmless error, namely that "error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." State v. Jones, 33 Wn. App. 372, 377, 656 P.2d 510 (1982) (quoting State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)).

Here, Wiggins testified that he was at Hockley's house on December 24, 2013, that he was angry with her, and that he hit her and knocked her down. He saw that Hockley had not gotten up but continued to lie on the ground bleeding. He told Hockley's daughter that Brooks had been the one to hurt her, but that he did not see Brooks do anything to Hockley. He then got into his car and drove away.

In light of Wiggins' own testimony and the other evidence presented by the State, we conclude that the evidence of his guilt is overwhelming. We fail to see how the mention of two remote convictions for non-violent offenses had any effect on the outcome of the trial in this case. We conclude the error was harmless.

## Computation of Offender Score

Wiggins argues that the trial court erred when it scored his two counts of possession of stolen property separately when it calculated his offender score. According to him, the two offenses should have been counted as one offense because they constituted the "same criminal conduct." Wiggins claims that the facts in the record clearly showed that the crimes were committed simultaneously

6

against the same victim. The State argues that it was reasonable and within the trial court's discretion to find that the two offenses did not encompass the same criminal conduct. According to the trial court, it was not clear from the record that the victim's vehicle, wallet, and passport had all been taken at the same time from the same place.[3]

We review a sentencing court's resolution of a same criminal conduct claim for abuse of discretion. State v. Graciano, 176 Wn.2d 531, 535, 295 P.3d 219 (2013). A trial court abuses its discretion if its decision "'(1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable;' (2) rests on facts unsupported in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.'" State v. Johnson, 180 Wn. App. 92, 100, 320 P.3d 197, review denied, 181 Wn.2d 1003, 332 P.3d 984 (2014)) (quoting State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012)).

---

[3] The State initially argued that the trial court correctly determined the offender score because the 1999 sentencing court did not check the box indicating that the two offenses encompassed the same criminal conduct and counted as one crime. Brief of Respondent at 21. This in and of itself does not indicate that the offenses should be considered as separate crimes for computing the offender score. If a prior sentencing court found that multiple offenses encompassed the same criminal conduct, the current sentencing court must count those prior convictions as one offense. RCW 9.94A.525(5)(a)(i). If the prior sentencing court did not make this finding, but nonetheless ordered the offender to serve the sentences concurrently, the current sentencing court must independently evaluate whether those prior convictions encompass the same criminal conduct and, if they do, must count them as one offense. Id.; RCW 9.94A.589(1)(a); State v. Williams, 176 Wn. App. 138, 141-42, 307 P.3d 819 (2013) review granted, 180 Wn.2d 1001, 319 P.3d 800, aff'd, 2014 WL5490401 (2014)). Here, where the prior sentencing court did not check the appropriate box but nonetheless ordered Wiggins to serve his sentences concurrently, the trial court was required to apply the same criminal conduct test.

Under RCW 9.94A.535(5)(a)(1), in the case of multiple prior convictions, all convictions are to be counted separately, except "[p]rior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct." These offenses shall be counted as one offense for the calculation of a defendant's offender score. RCW 9.94A.535(5)(a)(1). "Same criminal conduct" may be found only if the two crimes (1) require the same criminal intent, (2) were committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589. If any one of these elements is missing, the offenses must be individually counted toward the offender score. State v. Fisher, 139 Wn. App. 578, 586, 161 P.3d 1054 (2007). We narrowly construe the statute to disallow most assertions of same criminal conduct. State v. Price, 103 Wn. App. 845, 855, 14 P.3d 841 (2000). The defendant bears the burden of establishing that the crimes constitute the same criminal conduct. Graciano, 176 Wn.2d at 539.

There was no dispute over the issues of same criminal intent or same victim; the time and place element was the sole point of contention. We conclude that Wiggins has not met his burden to establish the same time and place element of same criminal conduct under RCW 9.94A.589(1). Graciano, 176 Wn.2d at 539. There is no information in the record about when and where the thefts took place, only the information about circumstances of Wiggins' apprehension. While the trial court could speculate that the wallet was in the car when the car was stolen, Wiggins offered no evidence in support of that assertion. As the trial court noted, it was equally as likely that Wiggins stole the car and credit card at different times and places. Where the record supports

8

No. 70653-5-I/9

either conclusion, the matter lies in the trial court's sound discretion. <u>Graciano</u>,

176 Wn.2d at 537-38. There was no abuse of discretion in calculating Wiggins'

offender score.

Affirm.

WE CONCUR:

Spearman, C.J.,

Cox, J.

9